IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS
(WICHITA DOCKET)

FILED
U.S. District Court
District of Kansas

JUN -3 2010

Clerk, U.S. District Court
By _____ Deputy Clerk

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | Criminal Action |
| ) | |
| v. ) | No. 10-*M-6074*-01-03-*KMH* |
| ) | |
| JOHN GRANT SHORE, ) | |
| KRISTINA PAULINE LASHMET, and ) | |
| RYAN WESLEY SWISHER, ) | |
| ) | |
| Defendants. ) | |
| ) | |

## CRIMINAL COMPLAINT

I the undersigned complainant being duly sworn state the following is true and correct to the best of my knowledge and belief:

### COUNT 1

On or about February 15, 2010, in the District of Kansas, the defendants,

**JOHN GRANT SHORE,
KRISTINA PAULINE LASHMET, and
RYAN WESLEY SWISHER,**

did unlawfully, knowingly, and willfully attempt, in any way or degree, to obstruct, delay, and affect commerce and did obstruct, delay and affect commerce, and the movement of any article or commodity in commerce, by robbery, to-wit: the defendants did take and obtain personal property from the person and presence of owners, operators, and employees of Loves Country Store, 208 E. Hwy 50, Syracuse, Kansas, a business engaged in and affecting interstate commerce, against their will, by means of actual and threatened violence, force, and fear of injury to their person.

In violation of Title 18, United States Code, Sections 1951 and 2.

## COUNT 2

On or about February 15, 2010, in the District of Kansas, the defendants,

**JOHN GRANT SHORE,
KRISTINA PAULINE LASHMET, and
RYAN WESLEY SWISHER,**

knowingly carried and used a firearm, which was discharged, during and in relation to a crime of violence for which they may be prosecuted in a court of the United States, that is, the robbery of Loves Country Store, 208 E. Hwy 50, Syracuse, Kansas, in violation of Title 18, United States Code, Section 1951.

In violation of Title 18, United States Code, Sections 924(c) and 2.

I further state that I am an officer with the Bureau of Alcohol, Tobacco, Firearms, and Explosives, and that this complaint is based on the following facts:

(See attached affidavit, which is incorporated herein by reference)

Continued on the attached sheet and made a part hereof:

     X  Yes          ___ No

Stephen F. Gravatt
Bureau of Alcohol, Tobacco
Firearms and Explosives

Sworn to before me and subscribed in my presence,

June 3, 2010  2:49 P.M. at Wichita, Kansas.
Date          Time

Karen M. Humphreys
United States Magistrate Judge      Signature of Judicial Officer

# **A F F I D A V I T**

I, Stephen F. Gravatt, being duly sworn, state the following:

1. Your affiant is employed as a Special Agent with the United States Department of Justice, Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) and is charged with investigating violations of Federal Firearms Laws. Your affiant has been employed with ATF since June of 2007. Prior to becoming a Special Agent for ATF, your affiant was a Special Agent for U.S. Immigration and Customs Enforcement from August 2003 to June 2007. Prior to becoming a Special Agent your affiant was a Police Officer for Kansas City, Missouri Police department for 5 years.

2. Your affiant is involved in an investigation regarding alleged violations of Federal Firearms Laws on the part of John Grant SHORE, Kristina Pauline LASHMET and Ryan Wesley SWISHER. Your affiant has knowledge of information that is either, personally known to the affiant, or has been provided to the affiant by other law enforcement personnel and witnesses.

3. As a result of your affiant's training and experience as an ATF Special Agent, your affiant is knowledgeable of Federal Firearms Laws. Your affiant has probable cause to believe that a crime has been committed by SHORE, LASHMET and SHORE involving (18 USC 1951 and 924(c)) the illegal Interference with commerce by threats or violence with a firearm.

1. On February 14, 2010, at 11:52 pm the Greeley County Sheriff's Office received notification from the Security Alarm Company of an alarm activation at the Eagle Travel Plaza located in Tribune, KS. At approximately 11:42 pm an employee, Linda Firner also called from the Eagle Travel Plaza and stated "I've just been robbed."

2. Sheriff Mark Rine, Undersheriff McDaniel and Deputy Evans were all dispatched and arrived a short time later. Firner was contacted and confirmed that the store had been robbed and that the suspect had fled the scene.

3. Firner advised that an unknown masked male had entered the store and pointed a gun at her and told her "this is a robbery." Firner stated that the unknown male grabbed a "drop" envelope from the counter that she had just counted which contained $360.00 in cash. Firner stated that he then came around the counter and told her to open the cash register. The unknown male then grabbed most of the cash and thirty three quarters from the cash drawer. The unknown male then told her to open the safe. Firner told him that she did not have access to the safe at which time he opened the cylinder to the gun and showed her the bullets. He told her if she didn't open the safe that he would shoot her in the foot. He then told her to open the other cash register. Firner told him that there was no money in the

other cash register. He then went to the cigarette rack and grabbed numerous loose packs of Marlboro cigarettes.

4. Firner stated that he stuffed the money and cigarettes in his coat pocket and left the store north bound. Firner stated that she did not see a vehicle outside the Eagle Travel Plaza. Firner then called police.

5. Approximately one hour later Sheriff Rine was notified that another robbery had occurred at the Love's Country store located in Syracuse, KS, Hamilton County. Sheriff Rine then responded to the Love's Country Store in Syracuse.

6. On February 15, 2010, at 1:14 am Hamilton County Sheriff's Office, Undersheriff Neal Talbot received a 911 call from the Love's Country Store. While Undersheriff Talbot was responding to the Love's Country Store he observed what appeared to be a Cadillac at a high rate of speed fleeing the area of the Love's Country Store. Undersheriff Talbot made contact with an employee in the parking lot of the store, Mark Aurand. Aurand advised he had just been robbed. Undersheriff Talbot advised Aurand to stay in the store and advised dispatch to send back up to the store while he followed the possible getaway vehicle east out of town.

7. The Love's Country Store employee, Mark Aurand told Deputy Helpingstine that there were two suspects, one male and the other one was possibly a female. Both suspects were wearing ski masks. Aurand stated that the unknown masked male told him that the gun was a .357 magnum and that he wanted the money. The unknown male shot once in the direction of Aurand, striking a refrigerator in an attempt to scare him and shot approximately four times at the safe's locking mechanism. The locking mechanism was separated from the safe by the bullets but was still not able to be opened. Aurand advised that they took the money out of both cash drawer and a lock box containing approximately $389.34. The suspects also took two cartons of Marlboro cigarettes valued at $100.00 and 40 lighters from the counter valued at $1.39 each. Aurand further stated that one of the suspects shook hands with him prior to exiting the store and thanked him for his cooperation.

8. On February 16, 2010, Stanton County Sheriff, Sheriff Bezona, contacted Greeley County Sheriff, Sheriff Rine, and advised that he had received a tip that a local hog business uses the same type of gloves that were described in the newspaper article regarding the robberies. The tipster also advised that a guy named Grant Shore, who works at the local hog business, owns a .357 handgun. Sheriff Bezona advised that the caliber of handgun was never mentioned in the newspaper article and that the tipster would not have known the caliber of the firearm used.

9. On February 16, 2010, Sheriff Rine conducted computer checks through Kansas Department of Revenue and discovered that John Grant Shore owns a 2002 Cadillac, License 656 BMD, VIN # 1G6KY54912U203047.

10. On March 2, 2010, Hamilton County, Sheriff Garza related to Sheriff Rine that Stanton County Sheriff's Office had received information that an anonymous female (Brit Toole) had been in a trailer house in Stanton County and had seen some of the stolen property that had been stolen from the Love's Country Store.

11. On March 3, 2010, Sheriff Garza and Sheriff Rine responded to Stanton County and contact Brit Toole (anonymous female). Toole advise that she had a girlfriend that told her she was at Ryan Swisher's house on February 15, 2010. The girlfriend told Toole while she was at the residence she had pushed open a bedroom door and saw Grant Shore and Kristen Lashmet with cash and Ed Hardy lighters. Toole said that her friend told her that Grant quickly covered up the cash and lighters and told her "you didn't see any of this." Toole would not reveal the identity of the female. Toole stated that she was the only one the unknown female had told, so if law enforcement went to interview the unknown female she would know who told the cops.

12. On March 3, 2010, it was discovered that Lashmet was in custody in Seward County jail on unrelated charges. Sheriff's Rine and Garza responded to the Seward County jail and interviewed Lashmet. Sheriff's Garza and Rine asked if she had any idea as to why they were contacting her. Lashmet stated she knew that law enforcement was looking for a white Cadillac from the robberies. Lashmet stated that she and Grant Shore are friends and that he owns a white Cadillac. Lashmet stated that she assumed that's why they were there to interview her. Lashmet was asked if she knew anything about the robberies. Lashmet hesitated for a moment and replied "no." Lashmet was told that Grant's Cadillac was in Syracuse at the time of the robbery and that all the stolen property was seen at Ryan Swisher's residence. Lashmet was advised that she and Shore were suspected of committing the robberies in Tribune and Syracuse at which time she stated "I probably need a lawyer." The interview was terminated at that time but Lashmet stated "but I want to reserve the right to call you guys later" as Sheriff's Rine and Garza were exiting the interview room.

13. On March 9, 2010, Sheriff's Garza and Rine interviewed Jacquita "Lennon" Chaffin. Chaffin advised that Shinea Householder told her that Swisher, Shore and Lashmet had robbed the two convenience stores. Chaffin related that on the night of February 14, 2010, she, Householder, Shore, Swisher and Lashmet had been at Swisher's house in Manter, KS. Chaffin advised that Shore, Swisher and Lashmet left the house for several hours. Chaffin stated that Householder left the house and went home at approximately 11:00 pm.

14. Chaffin stated that she had fallen asleep on the couch and was awakened by Lashmet later on when Lashmet gave her cigarettes and lighters telling her "here's

3

your present." Chaffin stated that she saw Lashmet, Shore and Swisher with a lot of cigarettes and lighters. Chaffin stated that Shore told her they had scammed the food stamp program.

15. Chaffin advised that Shore had been drinking and taking Xanax on the evening of February 14, 2010. Chaffin stated that she has seen Shore with a revolver and that he likes to show it off. Chaffin stated that Shore usually keeps the gun in his car. Chaffin further stated that she has discussed the robberies with Householder. Householder told Chaffin that she had seen lots of cigarettes in Lashmet's room.

16. On March 9, 2010, Sheriff's Garza and Rine interviewed Shinea Householder. Householder stated that she was hanging out at Swisher's house with her son until about approximately 10:00 pm on February 14, 2010. Householder stated she saw approximately five cartons of cigarettes in the 2nd drawer of the dresser in Lashmet's room and two rolls of quarters in her purse. Householder stated that Lashmet told her that she had done something stupid. Lashmet told Householder that she had been on the news

17. Householder stated that she had talked to Lashmet on the phone and Lashmet had told her that she had gotten rid of all the evidence. Householder stated that Lashmet was a blonde and dyed her hair brown approximately one week after the robberies. Householder stated that her and Chaffin had spoken about the robberies and that Chaffin suspected that Shore, Swisher and Lashmet had done the robberies.

18. On March 9, 2010, Sheriff's Garza and Rine responded to the Stanton County and interviewed Ryan Swisher at the Sheriff's Office. Swisher was advised of his Miranda rights and agreed to give a statement without an attorney present. Swisher stated that he was at his house in Manter, KS hanging out with Shore, Lashmet, Householder and Chaffin. Swisher stated that Chaffin went to bed and Householder left the house.

19. Swisher stated there was some talk at his house about robbing the Love's Country Store in Syracuse. Swisher stated that he got in the driver's seat of Shores Cadillac. Swisher stated that he thought that he could talk Shore and Lashmet out of doing the robberies before they got to Syracuse. Swisher stated he thought that he could get them drunk enough that they would pass out and then he could drive back to Manter, KS.

20. Swisher stated that when they got to the Love's store in Syracuse there was a Sheriff's vehicle parked in the parking lot of the grocery store. Swisher stated that the Sheriff's vehicle parked there long enough that they decided to go to Tribune.

21. Swisher stated that he parked the vehicle in front of a building just west of the Eagle Travel Plaza. Swisher stated that Shore and Lashmet got out of the vehicle

4

and walked towards the store. They both soon returned running and yelled at him to go. Swisher stated that they had Marlboro cigarettes and gave him a pack.

22. Swisher was asked if Shore had a revolver. Swisher advised that Shore does have a revolver and that he usually kept it under the front driver's seat of his vehicle. Swisher did not know the caliber of the revolver.

23. Swisher stated that they got lost for a moment driving gravel roads and ended up near Holly, CO. Swisher stated that once he got back to a black top road he drove to Syracuse, KS and parked in the alley near the Love's Country Store. Swisher stated that Shore and Lashmet once again got out of the car and walked towards the store. Swisher stated that he thought he heard a couple gun shots and then seen Shore and Lashmet running back to the vehicle. Shore and Lashmet got into the vehicle and again yelled at Swisher to go.

24. Swisher stated that they got into a brief car chase with police but was able to lose them by going south on country roads. Swisher stated that they ended up lost in Colorado at about 4:00 am when he ran out of gas. Swisher stated that he walked to a farmer's house and was able to get enough gas from the farmer to drive back to Manter, KS.

25. Swisher stated that when they got back to his house in Manter, KS, Lashmet and Shore were passed out in the back seat. Swisher stated that the stolen property was scattered throughout the back seat. Swisher stated that they took all the stolen property into the house and then to Lashmet's room that was in the back of the house to determine what they had. Swisher stated that Shore had given $100.00 to him but ultimately had given it back due to an argument they had later on. Swisher stated that Lashmet had given some of the cigarettes and lighters to Chaffin. Swisher further stated that soon after the robberies Lashmet had moved out and had taken all the stolen property with her and moved in with Shore who lived in Johnson City, KS.

26. On March 9, 2010, Sheriff Rine obtained a search warrant for the vehicle and residence of Shore located at 302 Nipp, Johnson City, KS. On this same day the search warrants were executed successfully and Shore was taken into custody and transported to the Stanton County jail.

27. The search warrant on the Cadillac revealed two packs of cigarettes and a .357 caliber bore brush which were seized for evidence. The search warrant at 302 Nipp, revealed clothing that matched the video from the surveillance tapes of the robbery, one roll of quarters, ten rolls of pennies and a Beretta, model ES100, 12 gauge shotgun, Serial number E02294-00 which were all seized for evidence.

28. On March 9, 2010, John Grant Shore was interviewed at the Stanton County jail. Shore was read his Miranda rights and agreed to give a statement without an attorney present. Shore stated that he did not know anything about the robberies

5

and that he was being set up. Shore refuse to cooperate with the investigation and the interview was terminated.

29. Your affiant believes that based on the aforementioned facts, there is probable cause to believe that John Grant SHORE, Kristina Pauline LASHMET and Ryan Wesley SWISHER violated the Racketeering Act under 18 United States Code, Sections 1951(a) and 924(c) by way of Robbery of the Love's Country Store and the Eagle Travel Plaza. Based on the aforementioned facts, your affiant believes that an arrest warrant should be issued for SHORE, LASHMET and SWISHER.

Subscribed and sworn before me this 3rd day of June, 2010

SA *[signature]*
Stephen F. Gravatt
ATF Special Agent

*[signature]*
Karen M. Humphreys
United States Magistrate Judge

6